IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JAMES T. CURTIS,

    Plaintiff,

v.                                        CASE NO.  5:04cv387-RH/WCS

AL SOLOMON, et al.,

    Defendants.

_____/

**ORDER GRANTING SUMMARY JUDGMENT IN PART**

This prisoner civil rights action alleges constitutionally deficient dental treatment and retaliation for having complained thereof.  Three defendants have submitted a special report, which has been deemed a motion for summary judgment.  The motion is before the court on the magistrate judge's report and recommendation (document 84) and both sides' objections thereto (documents 89 and 91, respectively).  I have reviewed de novo the issues raised by the objections.

The report and recommendation concludes that defendants' motion for summary judgment should be granted in part and denied in part.  I accept the report and recommendation and adopt it as the opinion of the court except in one respect:

I conclude that summary judgment should be granted on plaintiff's retaliation claims because he failed to exhaust his administrative remedies with respect to those claims.

## I

Plaintiff James T. Curtis is an inmate in the Florida Department of Corrections. He has sued the three defendants now at issue — Al Solomon, Ann Welch, and Dr. Daniel P. Cherry — and others. Mr. Curtis seeks relief under the eighth amendment based on the alleged denial of treatment for serious dental problems, including multiple cavities, temporomandibular joint disorder ("TMJ"), bleeding gums, and resulting headaches. Mr. Curtis also seeks relief under the first amendment based on alleged retaliation for the filing of grievances challenging the denial of dental care. Mr. Curtis alleges retaliation going beyond the denial of dental care, including, for example, threats to institute false disciplinary proceedings.

In Florida, a prisoner may file informal and formal grievances at the institutional level and, if unsuccessful, may appeal to the Secretary of the Department of Corrections. Mr. Curtis pursued repeated grievances at the institutional level and on appeal to the Secretary. Mr. Curtis consistently alleged the denial of care for some or all of the dental problems listed above. All of Mr. Curtis's complaints were rejected.

In his institutional level grievances, Mr. Curtis made brief references to retaliation. He once asked "not to receive any retaliatory action for this grievance." (Document 60-2 at 58.) In a later grievance, Mr. Curtis asserted that after a six-month delay in treatment of a tooth with a known cavity,

> [Mr. Curtis] was forced into having the tooth pulled by [two of the defendants] because they got mad at [Mr. Curtis] having to return to dental sick call and writing grievances.

Document 60-2 at 70.

In his appeals to the Secretary, Mr. Curtis never made any reference to retaliation.

## II

Under the Prison Litigation Reform Act, inmates must exhaust administrative remedies prior to filing actions of this type. *See* 42 U.S.C. §1997e(a). Mr. Curtis filed (and pursued to the Secretary) grievances challenging the alleged denial of dental treatment. He did not, however, assert that he suffered any other consequence (beyond the denial of dental treatment) in retaliation for having filed his grievances and appeals. Mr. Curtis's only references to retaliation were a request that it not happen — hardly an assertion sufficient to put prison officials on notice that Mr. Curtis claimed retaliation had in fact occurred — and an assertion that defendants delayed treatment of a single tooth in retaliation for Mr. Curtis's filing of grievances (and his use of sick call). Mr. Curtis made these

references to retaliation only at the institutional level, not as part of his appeals to the Secretary.

The issue is whether these filings at the institutional level, together with appeals to the Secretary on other grounds, were sufficient to exhaust Mr. Curtis's administrative remedies with respect to the retaliation claims he now asserts. I conclude that they were not.

For purposes of §1997e(a), the issue of the level of specificity that must be included in an administrative petition (for example, in a grievance) is determined, at least in the first instance, by reference to state law. *See, e.g., Strong v. David*, 297 F.3d 646 (7th Cir. 2002). This is so because it is *state* remedies that must be exhausted; a prisoner must exhaust whatever remedies the state provides, and in order to do so, the prisoner ordinarily must comply with the applicable procedures established by the state. An unbroken series of circuit decisions has followed *Strong* on this choice of law issue. *See, e.g., Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004) (citing *Strong* and concluding, "the specificity requirement should be interpreted in light of the grievance rules of the particular prison system"); *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004) ("we agree with [*Strong*] that prison grievance procedures supply the yardstick for measuring procedural default"); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (adopting *Strong*'s reasoning as sound). The law of the Eleventh Circuit, though

not as explicit as these decisions, apparently is in accord. *See Miller v. Tanner*, 196 F.3d 1190 (11th Cir. 1999) (analyzing state procedural requirements to assess adequacy of inmate's exhaustion).

In Florida, an inmate's grievance must be "clearly stated," both at the institutional level, *see* Fla. Admin. Code R. 33-103.006(1)(e), and again in any appeal to the Secretary. *See* Fla. Admin. Code R. 33-103.007(2)(e). Although this is a less than precise standard, a fair reading accords with the view adopted by the Second Circuit with respect to the exhaustion requirement in federal facilities: "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).

In *Brown v. Sikes*, 212 F.3d 1205 (11th Cir. 2000), the Eleventh Circuit may have gone substantially further, saying:

> We hold that 42 U.S.C. §1997e(a) requires a prisoner to provide in his administrative grievance *as much relevant information about his claims . . . as the prisoner reasonably can provide*.

*Brown*, 212 F.3d at 1210 (emphasis added). The court's characterization of this standard as a "holding" was less than precise. The issue was whether the prisoner was required to include in his grievance the name of the correctional officer who committed the acts at issue, even though the prisoner did not know the officer's

name.  The court *held* that the omission of the unknown name was not fatal; as the court said, a remedy that requires a prisoner to provide information he does not have is not an "available" remedy.  *Brown*, 212 F.3d at 1208.

*Brown* thus dealt with the effect of omitting *unknown* information — not how much of the *known* information must be provided.  The court *held* simply that the prisoner was not required to include in his grievance a name he did not have.  Still, by calling the standard quoted above a "holding," and articulating that standard in terms addressing not only what may be omitted, but also what must be included, the court apparently intended to specify the standard that district courts in this circuit — including this court — must apply in cases like this one.

Perhaps understandably, therefore, these defendants ardently invoke the *Brown* standard.  *See* Defendants' Objections (document 91) at 3.  One doubts the Department of Corrections really wants grievances that set forth every known fact; the experience in this court is that 60 or 100 page single-spaced handwritten complaints are not very helpful and are instead enormously burdensome.  And if the DOC wanted this level of detail, it could so provide in its regulations.  The DOC has not done so, requiring only that the grievance be "clearly stated."

Moreover, a system that made dismissal of a lawsuit proper unless every known fact was included in a grievance might be completely unworkable or at least counter-productive.  It would be a rare case in which defendants could not find

some fact that allegedly was not included in a grievance, thus potentially leading to fact-intensive litigation over exhaustion at the outset of nearly every prisoner case. This would impose a substantial burden on district courts. The purpose of the exhaustion requirement is to avoid, not foster, this type of burden.

In sum, there are reasons to doubt that the literal *Brown* standard ultimately will be deemed applicable in all prisoner cases. This is an issue I need not resolve, however, because Mr. Curtis not only failed to include all known facts; he failed even to identify the problem now at issue (retaliation encompassing conduct beyond the mere denial of dental care) or to alert the Secretary that he claimed there had been retaliation at all. The failure to allege any harm beyond the simple denial of dental care would constitute a failure to exhaust even under a standard far more modest than that articulated in *Brown*.

Instructive on this issue is *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004). There, a prisoner alleged that officials failed to protect him from assaults by other inmates. In the administrative process, the prisoner presented facts regarding the assaults and regarding his homosexuality. He made no mention, however, of his race, nor of any reason to believe race had anything to do with his treatment. When the prisoner later filed a federal lawsuit, he sought recovery on three theories: imposition of cruel and unusual punishment, denial of equal protection based on homosexuality, and denial of equal protection based on race. The Fifth

Circuit held that the prisoner had adequately exhausted his Eighth Amendment and sexual orientation claims but had *not* adequately exhausted his race claim. In reaching this conclusion, the court acknowledged that, in a grievance, a prisoner need not specify his legal theories, but the court said the grievance "must alert prison officials to a problem and give them an opportunity to address it." 385 F.3d at 518. Because the prisoner had failed to alert officials to any possible race problem, he had failed to exhaust that claim.

The same reasoning is fully applicable in the case at bar. Here, at the institutional level, Mr. Curtis mentioned retaliation only in passing and never alerted officials that he suffered any harm from retaliation other than the extraction of a tooth caused by a delay in treatment. In his appeals to the Secretary, Mr. Curtis never mentioned retaliation at all. In short, Mr. Curtis did not apprise officials at the institution, and even more clearly did not apprise the Secretary, of the alleged retaliation he now seeks to pursue in this litigation.[1] Mr. Curtis failed to exhaust his administrative remedies on any claim of retaliation.[2]

---

[1] A claim that is "clearly stated" at the institutional level but not mentioned at all — and thus not "clearly stated" — in an appeal to the Secretary ordinarily is not properly exhausted. This probably makes no real difference in the case at bar, however, because the only retaliation claim stated at the institutional level was a delay in treatment of one tooth, and that delay, if intentional and as harmful as plaintiff asserts, apparently would constitute an eighth amendment violation.

[2] This does not mean, of course, that Mr. Curtis will be precluded at trial from introducing evidence of retaliation, so long as the evidence is relevant to and

For these reasons and those set forth in the report and recommendation,

IT IS ORDERED:

The report and recommendation is ACCEPTED and adopted as the opinion of the court.  Defendants' summary judgment motion (document 60) is GRANTED IN PART and DENIED IN PART.  Summary judgment is denied on plaintiff's eighth amendment claims against defendant Ann Welch, granted on plaintiff's retaliation claims against Ms. Welch, and granted on plaintiff's claims against defendants Al Solomon and Dr. Daniel P. Cherry.  I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).  This matter is remanded to the magistrate judge for further proceedings consistent with the report and recommendation and this order.

SO ORDERED this 7th day of June, 2006.

s/Robert L. Hinkle
Chief United States District Judge

---

properly admissible on his remaining claims.  This order makes no ruling one way or the other on the admissibility of evidence.

*Case No: 5:04cv387-RH/WCS*